UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSAN SUAREZ; DELAILAH PEREZ;
ANDRE ROJAS,

                Plaintiffs,

          -against-

PARK LANE MANAGEMENT
CORPORATION, et al.,

                Defendants.

25-CV-0919 (KMW)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

KIMBA M. WOOD, United States District Judge:

    Plaintiffs Susan Suarez, Delailah Perez, and Andre Rojas, proceeding *pro se*, bring this action invoking the Court's federal question jurisdiction. Plaintiffs assert claims related to the conditions of their apartment and the litigation of landlord-tenant proceedings in the Civil Court of the City of New York, Housing Part ("Housing Court").

    On January 29, 2025, Plaintiffs filed an "order to show cause for preliminary injunction and temporary restraining order," asking this Court to stay the landlord-tenant proceedings and bar the Housing Court from issuing an order of eviction. (ECF No. 9.) In separate orders, issued on February 3, 2025, the Court granted Plaintiffs' requests to proceed *in forma pauperis* and denied their request for preliminary injunctive relief. (ECF Nos. 8, 9.)

    As set forth in this Order, the Court (1) dismisses the claims brought against the Housing Court judicial officers and staff, under the doctrine of judicial immunity; (2) declines to intervene in the Housing Court matter, under the *Younger* doctrine; and (3) dismisses Plaintiff Susan Suarez's claims, construed as arising under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"), for failure to state a claim, with 30 days' leave to replead.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" courts provide to *pro se* litigants, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

**BACKGROUND**

This action concerns Plaintiffs' Housing Court proceedings and their requests for repairs in their apartment. Plaintiff names the following defendants in connection with their Housing Court claims: the Housing Court; Housing Court Judges Evon Asforis, Frances Ortiz, Yekaterina Blinova, Daniele Chinea, Jack Stoller, Norma Jennings ("Housing Court Judges"); and Staci Coble, who is a Housing Court Attorney. The defendants named in connection with the requests for repairs are Plaintiffs' landlords and managing companies, Park Lane Management

Corporation, Kahen Properties, Majid Kahen, and Michael Himy.  The following facts are drawn from the complaint.[1]

From April 2024 to the present, Plaintiffs "have been kidnapped, harassed, assaulted, and terrorized by the alleged property owner Majid Kahen and men that he has sent to terrorize and assault us under the guise of performing repairs within our apartment." (ECF No. 1, at 4.)  In 2023, Plaintiff Susan Suarez asked Kahen to reschedule a "dismissal inspection," conducted by the New York City Department of Housing Preservation and Development, because of her medical condition.  She asserts that she was entitled to have input in the rescheduling of this inspection, as a reasonable accommodation under the Americans with Disabilities Act ("ADA"), but her requests for accommodation were ignored.

Plaintiffs' Housing Court claims concern Plaintiffs' litigation of their Housing Court matter before the named Housing Court Judges.  Suarez contends that in 2024, she filed two "repair actions" in Housing Court, and Housing Court Judge Asforis dismissed the petitions.  She also claims that "[e]ach time when I am making a special appearance, I notify the officer of the tribunal that I am Sui Juris and In Propria Persona.  Whenever I say these words, it immediately ignites the court staff including the officer of the tribunal." (*Id.* at 4.)  She claims, "[w]hen I informed ]Judge] Asforis of this, she immediately told me to shut-up and to speak when she tells me to speak." (*Id.*)  Plaintiff further claims that Judge Asforis violated the ADA when she permitted "an alleged lawyer to appear in a zoom video hearing without giving me notice or asking for my consent to the video hearing, even though I am blind and cannot see someone on the screen." (*Id.*)

---

[1] The Court quotes from the complaint verbatim.  All spelling, grammar, and punctuation appear as in the complaint unless noted otherwise.

Plaintiffs' claims against Housing Court Judge Ortiz concern a Housing Court hearing where Judge Ortiz "brushed us off and would not allow us to be heard." (*Id.* at 5.) Housing Court Judge Blinova, Plaintiffs allege, "allowed the discontinuance of" the same Housing Court matter. (*Id.*) Plaintiffs also allege that Judge Blinova "allowed Court Officer Hartman . . . to assault [Plaintiffs] [by] approaching us overly aggressively yelling at us trying to interrupt us from exercising our constitutional secured rights." (*Id.*) Officer Hartman allegedly "snatched away the court microphone that was placed on the table in front of us," and Judge Blinova "made no attempt to admonish or correct the behavior and actions of . . . Hartman." (*Id.*)

Suarez's claims against Judge Chinea and Coble, a Housing Court Attorney, concern "two [c]onditional [a]cceptance claims of lien" between Suarez and these two defendants. (*Id.*) Plaintiffs attach these two "claims of lien," which appear to be two Housing Court documents. Plaintiffs contend that "Coble has a financial interest in the outcome of the case." (*Id.* at 8.) Plaintiffs assert that Judges Jennings and Stoller are "aware of or should be aware of the criminal activity that has been perpetrated by [Judge] Chinea . . . and has not responded to any correspondence and has done nothing substantive to set right the fraudulent actions." (*Id.* at 8, 9.)

Plaintiffs "seek[] a final judgment that the[ir] [Housing Court matter] be voided with prejudice, that fraud should vitiate referenced case in its entirety, and that each Suri Juris Plaintiff be awarded Two Million USD per person per occurrence for damages." (*Id.* at 15.)

## DISCUSSION

**A.      Claims Against Housing Court Judges**

Plaintiffs' claims against the Housing Court Judges must be dismissed under the doctrine of judicial immunity. Judges are absolutely immune from suit for damages for any actions taken

4

within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "This authority includes the ability to administer and control the courtroom." *Levine v. Janosek*, No. 03-CV-1694 (BMC) (ETB), 2007 WL 9723282, at *3 (E.D.N.Y. Apr. 12, 2007).

"Even allegations of bad faith or malice cannot overcome judicial immunity," *id.* (citations omitted), because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation," *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Absolute immunity applies no matter how "erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193, 199. (1985).

Where a plaintiff alleges that a judicial officer violated the ADA when acting in her judicial capacity, judicial immunity extends to such claims. *See, e.g.*, *Positano v. New York*, No. 12-CV-2288 (ADS) (AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (collecting cases) ("The Plaintiff's argument that the ADA somehow permits his lawsuit in spite of the doctrine of absolute judicial immunity is unavailing. Courts in this Circuit have recognized that a plaintiff may not bring a lawsuit against a judge for those actions the judge took in his judicial capacity, even when those actions allegedly violated the plaintiff's rights under the ADA.").

"[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978). Judicial immunity does not apply, however, when a judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature).

Plaintiffs fail to allege any facts showing that Housing Court Judges Asforis, Ortiz, Blinova, Chinea, Stoller, and Jennings acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiffs sue these judicial officers for "acts arising out of, or related to, individual cases before [them]," they are immune from suit for such claims. *Bliven*, 579 F.3d at 210. To the extent Plaintiffs seek relief against Judge Blinova, for her alleged failure to intervene when a court officer removed a microphone from Plaintiffs, this judicial officer is immune from liability for her conduct related to controlling her courtroom.[2] To the extent Plaintiff asserts an ADA claim against Judge Asforis, arising from the judge's decision to hold a hearing over Zoom, this judicial officer is immune from liability for this claim because this alleged decision was made in her judicial capacity.

The Court therefore dismisses Plaintiffs' claims against the Housing Court Judges because they seek monetary relief against defendants who are immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

**B.    Claims Against Court Attorney Coble**

The doctrine of judicial immunity extends to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Jackson v. Pfau*, 523 Fed. App'x. 736, 737-38 (2d Cir. 2013)

---

[2] Plaintiffs do not name Officer Hartman as a defendant. Generally, claims brought against court security personal, regarding their conduct in controlling a courtroom, are barred under the doctrine of quasi-judicial immunity. *See, e.g.*, *Levine* 2007 WL 9723282, at *3 ("Judges cannot always achieve . . . control [of a courtroom] by edict alone. Judges must be able to act through other court personnel.").

6

(affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[ ] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (holding that a law clerk, "who was clearly assisting the judge in carrying out judicial functions, was covered by the doctrine of absolute immunity").

The claims against Court Attorney Coble, which concern her role as Housing Court Judge Chinea's court attorney, are barred under the doctrine of judicial immunity because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills*, 645 F.3d at 177.

C.  **Claims Requesting Intervention in Pending Housing Court Matter**

Plaintiffs ask this Court to intervene in their ongoing Housing Court matter. The complaint, however, does not plead any facts suggesting that their federal rights have been violated during the pendency of their Housing Court matter. Even assuming that the Court could exercise federal question jurisdiction over any claims asserted in the complaint, the Court declines, under the *Younger* doctrine, to intervene in this landlord-tenant case.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *Id*. at 53-54. Application of the *Younger* abstention doctrine has been extended to three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a

7

State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). With respect to cases that fall within the third category, a federal district court should "stay its hand" where there are pending state proceedings involving the enforcement of orders and judgments out of "respect for the ability of state courts to resolve federal questions presented in state-court litigation." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)

Plaintiffs do not plead any facts suggesting that they can assert a claim under federal law regarding their Housing Court matter. Rather, Plaintiffs ask this Court to enter a final judgment in their Housing Court matter, presumably because they are unhappy with the rulings issued by the Housing Court judges named in this action. Even if Plaintiffs could show that this Court has jurisdiction of their claims, the Court would decline to intervene in this proceeding because the Housing Court has an interest in enforcing its own orders, without federal court intervention. [3]

**D.    Claims Against Park Lane Management Corporation, Kahen Properties, Majid Kahen, and Michael Himy**

Plaintiff Suarez brings claims against the companies that manage her apartment building, Park Lane Management Corporation ("Park Lane") and Kahen Properties, and two individuals,

---

[3] To the extent Plaintiffs seek review from this Court, of a final judgment issued in Housing Court, the Court is barred from doing so under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). If the Housing Court issued a final judgment against Plaintiffs, and Plaintiffs are asking this Court to review and reject that state court judgment, this Court is barred from doing so. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). Plaintiffs may appeal any decision issued in Housing Court within the state court system.

Majid Kahen and Michael Himy. Suarez alleges that these defendants violated the ADA and the FHA when they did not accommodate her disability.

1. **The Americans with Disabilities Act**

Plaintiff invokes the ADA as a basis for her claims, but this statute does not apply here. The ADA consists of three parts: Title I, 42 U.S.C. § 12111 *et seq.*, which prohibits discrimination in employment; Title II, 42 U.S.C. § 12131 *et seq.*, which prohibits discrimination by public entities, such as state and local governments; and Title III, 42 U.S.C. § 12181 *et seq.*, which prohibits discrimination in access to public accommodations operated by private entities. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Private landlords and real estate management companies are not subject to the ADA because they are neither public entities nor are they places of public accommodation. *See Blitz v. BLDG Mgmt. Co.*, No. 20-CV-5462, 2023 WL 6162295, at *6 (S.D.N.Y. Sept. 21, 2023) (Abrams, J.) ("Neither a private individual nor a residential facility, such as an apartment is either a 'place of accommodation' within the meaning of Title III of the ADA, or a 'public entity' pursuant to Title II.") (quoting *Noe v. Ray Realty*, No. 19-CV-1455, 2020 WL 506459, at *1 & n.1 (S.D.N.Y. Jan. 31, 2020) (Abrams, J.) (dismissing ADA claims, reasoning that the ADA does not apply to private landlords)).

Plaintiff cannot state ADA claims against Park Lane, Kahen Properties, Kahen, and Himy—private management companies and private individuals—because they are not subject to the ADA. *See, e.g.*, *Blitz*, 2023 WL 6162295, at *6 ("Because Defendants here do not fall within the reach of the ADA, Plaintiff may not bring his ADA claims as a matter of law."). Plaintiff's claims of discrimination under the ADA against these defendants are therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

9

2. **Fair Housing Act**

The FHA "broadly prohibits discrimination in housing," *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979), based on an individual's race, color, religion, sex, familial status, national origin, or disability, 42 U.S.C. § 3604(a), (f)(1).  Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that (1) she is a member of class of individuals protected under the FHA; (2) she suffered "adverse treatment"; and (3) the defendant discriminated against her based on her protected classification.  *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (internal quotation marks omitted)).  At the pleading stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation."  *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted)).

The Court assumes, for the purposes of this order, that Plaintiff is protected under the FHA because of her disability.  She alleges no facts, however, showing that she suffered any adverse treatment or that Defendants discriminated against her *because of* her disability.  Plaintiff therefore fails to state a claim of intentional discrimination under the FHA, and the Court dismisses Plaintiff's FHA claims on this basis. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**LEAVE TO AMEND**

Plaintiffs proceed in this matter without the benefit of an attorney.  District courts generally grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Indeed, within the Second Circuit, "[a] *pro se* party should be granted leave to amend if 'a liberal reading of the

complaint gives any indication that a valid claim might be stated.'" *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 320 (2d Cir. 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Because Plaintiff Suarez may be able to allege additional facts to state a valid claim under the FHA, the Court grants Suarez 30 days' leave to amend the complaint to detail this claim.  This grant of leave does not extend to any claims Plaintiffs may seek to raise against the Housing Court Judges and Housing Court Attorney because this Order dismisses any claims against these defendants without leave to replead.  If Plaintiffs intended to raise other claims, arising from the conditions of their apartment, they may add those claims to an amended complaint.

## PRO SE LAW CLINIC

Plaintiffs are advised that there is a Pro Se Law Clinic available to assist self-represented parties in civil cases.  The Clinic may be able to provide Plaintiffs with advice in connection with their case.  The Pro Se Law Clinic is run by a private organization called the City Bar Justice Center; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any self-represented party through the Pro Se Intake Unit).

To make an appointment, Plaintiffs must complete the City Bar Justice Center's intake form.  A flyer for the City Bar Justice Center is attached to this Order.

If Plaintiffs have questions about the intake form or need to highlight an urgent deadline already disclosed in the form, the clinic can be contacted by phone (212-382-4794) or email (fedprosdny@nycbar.org).  In-person appointments in the Thurgood Marshall Courthouse in Manhattan and the Charles L. Brieant Jr. Federal Building and Courthouse in White Plains are

available Monday through Thursday, 10am to 4pm. Appointments are also available remotely Monday through Friday, 10am to 4pm.

## CONCLUSION

Plaintiffs' complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (iii). The Court declines, under the *Younger* doctrine, to intervene in Plaintiffs' Housing Court matter. The Court grants Plaintiffs 30 days' leave to file an amended complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this action open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   October 28, 2025
         New York, New York

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge